```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                         NORTHERN DIVISION
```

ANTHONY COTTEN, INDIVIDUALLY,
AND ON BEHALF OF ALL
WRONGFUL DEATH BENEFICIARIES
OF TONI COTTEN, DECEASED; AND
THE ESTATE OF TONI COTTEN, DECEASED
BY AND THROUGH LYNNITA BARTEE,
ADMINISTRATRIX                                             PLAINTIFFS


VS.                                CIVIL ACTION NO. 3:15CV514TSL-RHW

THE UNITED STATES OF AMERICA;
H.C. WATKINS MEMORIAL HOSPITAL;
RUSH MEDICAL FOUNDATION;
RUSH HEALTH SYSTEMS, INC.; IVAN
ZAMORA, M.D.; JAMES LOCK, M.D.;
EMCARE PHYSICIAN SERVICES, INC.,
EMERGENCY MEDICAL SERVICES CORPORATION,
EMCARE PHYSICIAN PROVIDERS, INC.,
EMCARE, INC., AND JOHN DOES 1-5                            DEFENDANTS


                     MEMORANDUM OPINION AND ORDER

Toni Cotten died from sepsis at 5:00 on the morning of August 20, 2013, less than 20 hours after presenting at the emergency department of H.C. Watkins Memorial Hospital. Following her death, plaintiffs Anthony Cotten, individually and on behalf of all wrongful death beneficiaries of Toni Cotten, deceased, and the Estate of Toni Cotten, deceased, by and through Lynnita Bartee, Administratrix, filed the present action against H.C. Watkins Memorial Hospital, among others, alleging medical malpractice in the care and treatment she received at H.C. Watkins Memorial

Hospital.[1]  Plaintiffs have now moved for partial summary judgment as to the standard of care and breach of the standard of care on their claim against defendant H.C. Watkins Memorial Hospital. Defendant Rush Medical Foundation d/b/a H.C. Watkins Memorial Hospital (Watkins Hospital or Hospital) has responded in opposition to the motion.  The court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that plaintiffs' motion should be granted.

Facts

The following facts are undisputed.  On the morning of August 19, 2013, Toni Cotten, age 18, arrived at the emergency department of Watkins Hospital, accompanied by her father.  Ms. Cotten complained that she was weak and had pain in her extremities.  She reported she had been having symptoms for about forty-eight hours. She also provided a medical history, which included that she had sickle cell disease.[2]  She was seen in the emergency department by

---

[1]  In addition to suing H.C. Watkins Memorial Hospital, plaintiffs named as defendants Ivan Zamora and James Lock, physicians who treated Ms. Cotten in the emergency department and following her admission to the hospital on August 19, for their alleged negligence in failing to timely diagnose sepsis and respond appropriately, and the United States of America for alleged negligence of Dr. Owen Roberts, a physician employed by the United States who is alleged to have consulted wtih Dr. Zamora regarding Toni Cotten's condition and treatment while in the Hospital's emergency department.

[2]  See generally http:/www.hopkinschildrens.ord/sickle-cell-disease.aspx ("A genetic disease, most prevalent in the

2

Dr. Ivan Zamora, who noted that "[t]his is a typical [sickle cell pain] crisis for patient and except for severity there are no unusual symptoms."[3] Although Dr. Zamora suspected Ms. Cotten might also have an infection since she had fever and her white blood count was elevated, he assumed what she had was a "[sickle cell] like syndrome," for which he ordered IV pain medication and fluids. He also ordered type and screen and cross-match three units of packed red blood cells in preparation for a blood transfusion.

While Ms. Cotten was still in the emergency department, Dr. Zamora ordered urine and blood cultures to investigate the potential of infection. In the meantime, he ordered IV administration of Cipro, a broad spectrum antibiotic, STAT, to be administered after blood cultures were drawn.[4] At 2:15 p.m., Dr. Zamora ordered Ms. Cotten admitted to acute inpatient unit and

---

African-American community, sickle cell disease (also known as 'sickle cell anemia') is a disease in which red blood cells are an abnormal crescent shape. Red blood cells are normally shaped like a disc. They clump together, blocking blood vessels and creating intense pain.").

[3] As Dr. Zamora had not previously treated Ms. Cotten, this information presumably came from Ms. Cotten.

[4] The first order for IV Cipro was not entered in the chart, but it is undisputed that Dr. Zamora gave a verbal order for IV Cipro, STAT – meaning immediately – but told the nurse on duty, Sara Beckman,to administer the Cipro after blood was drawn for the blood culture he had ordered.

3

around 2:30 p.m., she was moved from the emergency department to the hospital floor. It is undisputed that while Ms. Cotten was in the emergency department, the antibiotics Dr. Zamora ordered were not administered. The emergency department nurse assigned to Ms. Cotten, Sara Beckman, noted that Cipro was hung awaiting to be started infusion pending blood cultures to be drawn by the lab; however, blood was never drawn for the blood culture while Ms. Cotten was in the emergency department and the Cipro was not administered.

At 4:00 p.m., after Ms. Cotten was moved to the floor, Dr. Zamora ordered transfusion of two units of packed red blood cells; transfusion of the first unit began at 4:30 p.m. At 5:20, Dr. Zamora gave an order for IV Cipro 400 mg, "start now." And at 6:05 p.m., he entered an order for IV Cipro "now" and twice a day, and for Cipro injections every twelve hours. Transfusion of the first unit of packed red blood cells ended at 6:55 p.m. and the floor nurse started the second unit at 8:25 p.m. The Cipro Dr. Zamora ordered had not been administered. The floor nurse noted in the medical record at 9:00 p.m. "medication held, pt. receiving blood at this time."

After the second transfusion ended at 10:10 p.m., Dr. James Lock, who had taken over Ms. Cotten's care after Dr. Zamora left work for the day, ordered a third transfusion, which was started

4

at 10:40 p.m.. At that point, blood still had not been drawn for the cultures ordered by Dr. Zamora and the Cipro he had ordered had not been administered. At 12:02 a.m. on August 20, the nurse made another note in the medical record that Cipro was not given. The third transfusion was complete at 12:30 a.m. Finally, at 1:58 a.m., blood was collected for the cultures Dr. Zamora had ordered.

Over the next hour, Ms. Cotten's condition deteriorated further. By 2:50 a.m., the nurse noted, she was becoming "unresponsive" and her extremities were "cold"; at 3:00 a.m., a code was called, and at 3:29 a.m., a second code was called. She was intubated; and while they were able to regain a pulse, Ms. Cotten did not regain consciousness. At 4:48 a.m., Dr. Lock ordered Ms. Cotten transferred to Rush Medical Center in Meridian via ambulance. However, minutes later, at 4:54, a third code was called and she did not survive. She was pronounced dead at 5:03 a.m.

Plaintiffs' Motion

Plaintiffs move the court to enter partial summary judgment in their favor establishing two specific matters: (1) that the failure of the Watkins Hospital nurses to administer the antibiotic Cipro to Toni Cotten was a breach of the applicable standard of care and duty owed to Toni Cotten, and (2) that failure of the Watkins Hospital nurses to ensure that blood for

5

the blood culture was timely drawn was a breach of the applicable standard of care and duty owed to Toni Cotten by Watkins Hospital and its employees.[5]

Summary Judgment Standard

Summary judgment is proper when the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. Anderson, 477 U.S. at 248, 106 S. Ct. 2505.

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

---

[5] Plaintiffs acknowledge that other disputed issues, including other alleged breaches of the standard of care by Watkins Hospital and its employees, elements of "causation", and amount of appropriate damages are not within the scope of their motion.

6

Analysis

To prevail in a medical malpractice case under Mississippi law, the plaintiff must prove that there was "a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant." Hubbard v. Wansley, 954 So. 2d 951, 956-57 (Miss. 2007) (citing Drummond v. Buckley, 627 So. 2d 264, 268 (Miss. 1993)). Generally, "'[w]hen proving these elements in a medical malpractice suit, expert testimony must be used'" to "'identify and articulate the requisite standard that was not complied with'" and to "'establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.'" Id. (quoting Barner v. Gorman, 605 So. 2d 805, 809 (Miss. 1992)). This general rule is subject to "an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience." McGee v. River Region Med. Ctr., 59 So. 3d 575, 578 (Miss. 2011) (quoting Coleman v. Rice, 706 So. 2d 696, 698 (Miss. 1997)).

Here, plaintiffs have presented a detailed expert report from Irish Patrick-Williams, R.N., Ph.D., who identifies the applicable standard of care and states that the Watkins Hospital nurses

7

assigned to Toni Cotten's care breached the standard of care by failing to follow Dr. Zamora's orders, and more specifically, by failing to ensure the blood was drawn for the blood culture and failing to timely administer antibiotics to Ms. Cotten as ordered by Dr. Zamora.  In response to the motion, Watkins Hospital argues that summary judgment is precluded by numerous genuine issues of material fact, including

> 1. Whether Cipro was ordered "STAT" in the Watkins Hospital Emergency Department.
> 2. Whether it was reasonable and appropriate to administer Cipro simultaneously with blood transfusions.
> 3. Whether it was reasonable and appropriate to prioritize concurrent or simultaneous orders.
> 4. Whether nursing personnel were under a duty to obtain laboratory specimens.

In the court's opinion, these are not "genuine issues of material fact" that would preclude summary judgment.

First, clearly, there is no dispute as to whether Dr. Zamora ordered Cipro "STAT" in the emergency department.  Dr. Zamora has testified without contradiction that he did so.  Of course, it is also undisputed that Dr. Zamora's "STAT" order for Cipro was qualified by his directive to Nurse Sara Beckman that the Cipro be administered only after a blood culture was drawn (which was also

a STAT order). However, that further undisputed fact is fully accounted for in the opinion of plaintiffs' nursing expert who states, without contradiction from any defense expert, that in view of Dr. Zamora's "STAT" order, the applicable nursing standard of care required that the nurse in charge of Ms. Cotten's care either ensure that blood culture was promptly drawn by the lab or that she drew the blood herself so that the Cipro could be timely administered. Neither was done.

As plaintiffs correctly point out, the remaining issues which the Hospital contends foreclose summary judgment, i.e., issues numbered 2 - 4 set out above, are not disputed issues of fact at all but rather issues which implicate the applicable standard of care and whether the nursing staff complied with that standard of care. It is not the *facts* that are in dispute. Instead, the only dispute identified by the Hospital centers on whether the nurses acted reasonably (i.e, in accordance with the applicable standard of care) under the circumstances presented (which circumstances are not in dispute). Plaintiffs have offered expert testimony that the nursing staff violated the nursing standard of care in failing to administer Cipro to Ms. Cotten and in failing to ensure that the blood culture was timely drawn. The Hospital, on the other hand, has designated no expert witness to offer any contrary opinion as to the standard of care or to assert an opinion that

the nurses complied with any standard of care.[6] As a result, plaintiffs' expert's opinion stands uncontroverted in the record and thus establishes, as a matter of law, that the Hospital nursing staff involved in the care and treatment of Ms. Cotten – and specifically those nurses identified in Williams' expert report – breached the applicable standard of care in failing to ensure that the blood was drawn and the Cipro administered. Plaintiffs' motion for partial summary judgment will therefore be granted.

Conclusion

Based on the foregoing, it is ordered that plaintiffs' motion for partial summary judgment against Watkins Hospital is granted and it is thus taken as established that (1) the failure of the Watkins Hospital nurses to administer the antibiotic Cipro to Toni Cotten was a breach of the applicable standard of care and duty owed to Toni Cotten, and (2) that the failure of the Watkins Hospital nurses to ensure that blood for the blood culture was timely drawn was a breach of the applicable standard of care and

---

[6] The court recognizes that in an effort to demonstrate that they acted reasonably under the circumstances, some of the nurses involved in Ms. Cotten's care have offered explanations as to why they failed to administer Cipro as ordered by Dr. Zamora and/or failed to ensure that the blood culture was drawn. However, these nurses have not been designated as experts and thus, their testimony is not sufficient to establish a standard of care or to controvert Williams' expert testimony.

duty owed to Toni Cotten by Watkins Hospital and its employees.

SO ORDERED this 18th day of May, 2017.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE